# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

CIVIL ACTION NO. 3:09-cv-00336-M

ROGER L. WHEELER                                                                PETITIONER

V.

THOMAS L. SIMPSON, WARDEN                                RESPONDENT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Roger Wheeler's "objections" to the Magistrate Judge's order denying his request for discovery and request for funds to hire an expert. The Respondent, Warden Thomas Simpson, failed to file a response. The matter now stands submitted. For the reasons that follow, the Magistrate Judge's order is **AFFIRMED**.

## I. BACKGROUND

On the morning of October 2, 1997, the bodies of Nigel Malone and Nairobi Warfield were discovered inside the apartment they shared in Louisville, Kentucky. Malone was discovered laying in a pool of blood in the hallway of the apartment. He had been stabbed nine times. Warfield was found in a bedroom, leaning against a wall and covered with a blanket, with a pair of scissors protruding from her neck. She had been beaten and strangled to death. An autopsy later revealed that she was pregnant.

Wheeler became a suspect just hours after the bodies were discovered. He initially claimed that he did not visit Malone and Warfield's apartment the night of the murders.

However, after DNA testing of blood swabs recovered at the murder scene confirmed the presence of Wheeler's blood on the bedroom sheets, bedroom telephone, and thigh of Nairobi Warfield, Wheeler changed his story. At trial, he testified that he went to the apartment to deliver crack cocaine and was attacked by the real murderer, a man dressed in Army fatigues and wearing a Halloween mask.

The jury rejected Wheeler's story. He was found guilty of two counts of intentional murder and sentenced to death. Wheeler took a direct appeal as a matter of right to the Supreme Court of Kentucky where he raised 28 issues for review. The Kentucky Supreme Court entered a final opinion that affirmed Wheeler's conviction and death sentence on December 18, 2003. See Wheeler v. Commonwealth, 121 S.W.3d 173 (Ky. 2003).

Wheeler thereafter filed a motion with the trial court to vacate the judgment pursuant to Kentucky Rule of Criminal Procedure 11.42. In that motion, Wheeler raised 14 grounds for relief, including multiple claims of ineffective assistance of counsel. The trial court denied Wheeler's motion without an evidentiary hearing. The Supreme Court of Kentucky affirmed in an opinion entered on November 26, 2008. Wheeler v. Commonwealth, 2008 WL 5051579 (Ky. 2008).

On May 8, 2009, Wheeler filed this petition for habeas corpus pursuant to 28 U.S.C. § 2254. He then sought leave of court to depose his trial attorneys and his attorney on direct appeal of his conviction; he also sought funds to hire a blood spatter expert pursuant to 18 U.S.C. § 3599(f). Magistrate Judge Whalin, in a 54-page order, denied Petitioner's requests on May 21, 2010. Petitioner now seeks this Court's review of that decision.

## II. STANDARD

Decisions on discovery matters, as well as decisions regarding funding of experts under 18 U.S.C. § 3599(f), are non-dispositive and are reviewed for clear error. See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); see, e.g., Parrish v. Ford Motor Co., No. 89-6290, 1990 WL 109188, *3 (6th Cir. August 2, 1990); Haight v. Parker, No. 3:02-CV-206-S, 2010 WL 1489979 (W.D. Ky. April 13, 2010). An order is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed"; and it is contrary to the law if "it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Botta v. Barnhart, 475 F.Supp.2d 174, 185 (E.D.N.Y. 2007) (quotation omitted).

## III. DISCUSSION

Petitioner has filed a list of objections to Magistrate Judge Whalin's order denying Petitioner's request to depose counsel and request for funds to hire a blood spatter expert pursuant to 18 U.S.C. § 3599(f). The Court considers the objections in turn.

### A.

Wheeler's request to depose his counsel is, of course, a request for discovery. In the habeas context, petitioners "have no right to automatic discovery." Beuke v. Houk, 537 F.3d 618, 654 (6th Cir. 2008) (quotation omitted). Rather, discovery is only appropriate upon a showing of "good cause," i.e., where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-909 (1997) (quotation

omitted). A state-custody-petitioner is entitled to habeas relief only where the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d); see also Davis v. Lafler, --- F.3d ----, 2010 WL 2583471, *3 (6th Cir. 2010).

State court application of federal law is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring); Brown v. Palmer, 441 F.3d 347, 350 (6th Cir. 2006). The state court's application of federal law is unreasonable where "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Williams, 529 U.S. at 409 ("Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.").

At issue here is the Kentucky Supreme Court's application of the two-part test for ineffective assistance of counsel claims announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). Under that test, a petitioner must first "show that counsel's performance

was deficient," i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . [or] that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The United States Supreme Court has instructed that, in answering this question, "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . " Id. at 689. If a petitioner clears this hurdle, he must then "show that the deficient performance prejudiced the defense" in order to prevail. Id. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

In this case, Wheeler presents five objections to the Magistrate Judge's order denying his request to depose counsel.

1.

Petitioner first objects to the Magistrate Judge's conclusion that discovery concerning trial counsels' investigative efforts related to law enforcement's blood collection efforts is unnecessary because Wheeler has not colorably shown that he suffered prejudice as a result of trial counsels' allegedly deficient investigation. Wheeler argues that he "gave a logical reason why he had lied to the police," initially, about being in Ms. Warfield's home, i.e., "to protect himself and his family," and that his later trial testimony that he was in the home but never saw Ms. Warfield was only "contradicted by the one thing for which it could not account – how did Petitioner's dripped blood get on Ms. Warfield." (DN 39, Petitioner's

5

Objection, p. 4). As Petitioner sees it, then, discovery on this issue is appropriate because "had his counsel established an innocent explanation for his blood on Ms. Warfield's thigh, . . . the result of the trial, to a reasonable probability, would have been different." Id.

The Court disagrees. Petitioner's argument assumes that the "dropping" of blood on Ms. Warfield's thigh, as opposed to the possibility that it was "transferred" there, was critical to the jury's decision. That is highly unlikely. As the Magistrate Judge concluded, not only did "the jury obviously discredit[] . . .[Wheeler's] convenient testimony" about his visit to the apartment that night, including the until-that-time completely-unheard-of story about an army-fatigue-wearing-Halloween-masked-murderer, it also heard about Petitioner's "unsuccessful efforts to suborn perjury from the young woman, Theresa Warrick, whom he falsely claimed inflicted a bite wound on his left forearm." (DN 38, Magistrate's Order, pp. 25-26). Add to this complete lack of credibility that Wheeler's blood was found in multiple places in the apartment, not simply on Ms. Warfield's thigh, and the Court has no trouble concluding that the Magistrate's decision to deny discovery on the ground that the result of the trial would not have been any different is not clearly erroneous.

2.

Petitioner also objects to the Magistrate Judge's conclusion that counsels' failure to call Earl Rickerts did not prejudice Petitioner. At trial, Denise Mumpfort testified that on the evening of the murders, Wheeler entered the B-Line convenience store where she worked, looking like he had blood poured upon him; she specified that Wheeler had blood on his head and jacket and cuts on his fingers. Mumpfort also testified that when she asked Wheeler

6

about the blood, he told her that a girl had hit him on the head with something. Earl Ricketts, the store security guard who was also present at the B-Line that evening, told police that Wheeler had entered the store that evening, and had blood on him, but not a lot of blood. Wheeler now contends that his trial counsel was ineffective for failing to call Ricketts, since, as Wheeler sees it, Ricketts' testimony would have rebutted Mumpfort's testimony while supporting his own story that he received only minor wounds when the masked attacker cut his arm and fingers.

The Court is unpersuaded. For one thing, the Court is not convinced that counsels' failure to call Ricketts was objectively unreasonable because, as Magistrate Judge Whalin pointed out, "Ricketts' statement to police does not directly rebut the testimony of Mumpfort. Rather, the difference between their separate characterization of the amount of blood seen on Wheeler is merely one of degree and a relatively minor degree at that." (DN 38, Magistrate's Order, p. 28). But even assuming *arguendo* that it was unreasonable for counsel not to call Ricketts, discovery is still inappropriate because Petitioner cannot show prejudice. Alleged differences as to the amount of blood Wheeler had on him as attested to by two store clerks "simply does not," as the Kentucky Supreme Court explained, "'undermine confidence in the outcome'" of Wheeler's trial. Wheeler v. Commonwealth, 2008 WL 5051579, *5 (Ky. 2008) (quoting Strickland, 466 U.S. at 694). The Magistrate Judge's denial of discovery on this issue will therefore be upheld.

3.

Petitioner next objects to the Magistrate Judge's conclusion that Petitioner could not

7

demonstrate prejudice on his ineffectiveness claim based on trial counsels' failure to ask him about the shoes he was wearing at the time of his arrest. Petitioner argues that it was objectively unreasonable for his trial counsel to have failed to ask him if the shoes he was wearing when he was arrested were the same shoes he was wearing when he went to the victims' apartment; the idea is that, if they were the same shoes, the jury would likely have concluded that someone else was in the apartment because a bloody shoe print at the scene of the crime was reportedly of a different size than the shoes Petitioner was wearing when he was arrested – and, hence, the jury would have believed Wheeler's story about the masked murderer and there would likely have been a different outcome at trial. The Court again disagrees.

Wheeler has failed to show that the requested discovery would lead to his success on the merits because, even if the question had been asked, "it is unlikely that any reasonable jury would have swallowed [Petitioner's] theory, especially since it was premised solely on his own claim that the shoes were the ones he was wearing on the night of the murder with regard to the bloody shoe prints." Wheeler, 2008 WL 5051579 at *6. And, as Magistrate Judge Whalin noted, even if the jury would have somehow swallowed Petitioner's proposed testimony that the shoes he was wearing when he was arrested were the ones he wore to the scene of the crime, there are numerous other inferences the jury could have more reasonably drawn from that fact about the shoes than the one Wheeler pushes, i.e., that the bloody print was from the real murderer, whom he met, fought off, and briefly unmasked, before escaping. Accordingly, the Court finds that the Magistrate Judge's decision to deny

8

discovery was not clearly erroneous.[1]

4.

Wheeler also objects to the Magistrate Judge's refusal to allow discovery related to counsels' introduction of furlough evidence. Petitioner does not dispute that there was "an obvious strategy involved in introducing Petitioner's prior furloughs into the trial." (DN 39, Petitioner's Objection, p. 7). He argues, however, that "this strategy should have accounted for the potential cross-examination that occurred"; and he concludes that "[i]f trial counsel had determined that they could not stop the cross that did occur, they should not have brought the furloughs to the jury's attention." Id. This may, as a tactical matter, be true, especially with the benefit of hindsight. But it does not mean that counsels' performance was constitutionally deficient. Counsel chose to introduce furlough evidence, and risk the cross-examination that followed, for two reasons. First, because "Wheeler apparently was a model prisoner and received two weekend passes from prison without incident . . . . [and] counsel put these facts before the jury to establish that Wheeler, although convicted of both murders at that point, nevertheless if incarcerated, rather than executed, would likewise conform his conduct to prison rules and regulations and would present no danger to others or to himself." (DN 38, Magistrate's Order, p. 34). And second, because the fact that "convicted murderers are not eligible for furloughs in Kentucky" would tend to show that Wheeler posed no risk of future dangerousness. Id.

---

[1] Petitioner's other, specific objections to the Magistrate Judge's findings about the shoes need not be addressed as they do not change this conclusion.

The possibility that Rawlins would admit on cross-examination that the Kentucky Department of Corrections ("KDOC") "remained capable of changing its own regulations" does not render defense counsels' strategy objectively unreasonable. Id.; Campbell v. Coyle, 260 F.3d 531, 551 (6th Cir. 2001) (explaining that "an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"); cf. Keith v. Mitchell, 455 F.3d 662, 671 (6th Cir. 2006) (finding that the decision of trial counsel to introduce defendant's pre-sentence report to the jury in order to show that defendant had no prior history of violence, had maintained employment, and had been progressing well on parole, was not ineffective assistance of counsel despite the jury receiving possibly detrimental information concerning the defendant's prior history of incidents with the victim's brother and information about the defendant's non-violent criminal record and recreational use of marijuana). Because the Court concludes that the Kentucky Supreme Court did not err in finding that "[t]he strategy employed by Appellant's trial counsel was not unreasonable or incompetent," Wheeler v. Commonwealth, 2008 WL 5051579, *10 (Ky. 2008), discovery on this issue will not lead to Petitioner's success on the merits, and the Magistrate Judge's decision to deny discovery was proper.

5.

Petitioner next objects to the Magistrate Judge's conclusion that "Wheeler's trial counsel . . . cannot be held to be ineffective for their failure to object to what the state court's have now determined to be proper cross-examination." (DN 38, Magistrate's Order, p. 41). Petitioner argues that counsels' failure to object to Rawlins' testimony that the KDOC could

10

possibly change its policy regarding prisoner furloughs in the future, even if proper under state law, "violated Petitioner's federal due process rights to accurate, reliable, and fair sentencing," and that, accordingly, counsel was objectively unreasonable in failing to object at trial and the Kentucky Supreme Court's ruling "as to the admissibility of the furlough evidence was an unreasonable application of Caldwell, Ramos, Woodson, and Lockett." (DN 8, Petition for Writ of Habeas Corpus, pp. 81-89) (citations omitted). As Wheeler puts it, "[a]llowing the Commonwealth to argue that the KDOC may make Petitioner eligible for a furlough in the future improperly slanted the evidence in favor of a death sentence and undermined the jury's proper role in determining the appropriateness of a death sentence." Id. at 83.

The Court finds this argument unpersuasive. It is true, as Petitioner says, that the Supreme Court has expressed concern with sentencing evidence and arguments that "create[] the misleading impression that the jury can prevent the defendant's return to society only by imposing the death sentence," California v. Ramos, 463 U.S. 992, 1010 (1983), or instruct the jury that "the responsibility for determining the appropriateness of the defendant's death rests elsewhere," Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985). However, the high court has made clear that "nothing in the Constitution prohibits the prosecution from arguing any truthful information relating to parole or other forms of early release."[2] Simmons v.

---

[2] Indeed, Ramos and Caldwell do not suggest otherwise. In Ramos, the court held that a "capital sentencing jury's consideration of the Governor's power to commute a life sentence is not prohibited by the Federal Constitution" because "informing the jury of the Governor's power to commute a sentence of life without possibility of parole was merely *an accurate statement of a potential sentencing alternative.*" Id. at 1009-10 (emphasis added). And, in Caldwell, the

11

South Carolina, 512 U.S. 154, 168 (1994). In this case, the jury was given truthful information about the availability of furlough in Kentucky: it was correctly informed that convicted murderers are not eligible for furloughs, and it was told, again correctly, that the Department of Corrections retains the power to change that policy in the future. Because the Court concludes that the Kentucky Supreme Court's decision was not contrary to clearly established federal law, and because the Court does not believe that counsels' failure to object to the prosecution's cross-examination and closing argument here can be "objectively unreasonable" in light of the applicable state and federal law, the Court agrees with the Magistrate Judge that Petitioner has failed to show good cause to depose his trial counsel.

B.

Finally, Wheeler objects to the Magistrate Judge's denial of his request for funds to hire a blood spatter expert to explore how his blood ended up on Ms. Warfield's thigh. Wheeler argues that if an expert were to testify that Wheeler's blood was "transferred" rather than "dropped" onto Warfield's thigh, it would negate the inference that Wheeler lied when he said he did not see Warfield at the apartment. Petitioner also specifically objects to the Magistrate Judge's conclusion that "[t]he jury . . . could have readily accepted, had it chosen to do so, the proposition that it was the 'true killer' whose knife, which slashed Wheeler, that dripped Wheeler's blood onto the victim. The jury had within its knowledge all the facts

---

issue was whether a capital sentence was valid when the sentencing jury was *wrongly informed* by the prosecutor that responsibility for determining the appropriateness of a death sentence rested, not with the jury, but with the appellate court. Id. at 323 (emphasis added). Petitioner only cites Woodson and Lockett for general propositions of law; they add nothing substantial to his argument.

necessary to reach such inferences, yet obviously chose not to do so." (DN 38, Magistrate's Order, p. 54). Wheeler claims that this conclusion was erroneous because "[t]he jury did not have an ability to make 'such inferences' without expert opinion saying that such a situation was possible." (DN 39, Petitioner's Objection, p. 9).

The Court agrees with the Magistrate Judge that the jury was capable of drawing such inferences without the aid of expert testimony, and that funding for a blood spatter expert is otherwise inappropriate in this case. Under 18 U.S.C. § 3599(a)(2), (f), a capital habeas petitioner "who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services." Id. "Expert services are 'reasonably necessary' when 'a substantial question exists over an issue requiring expert testimony for its resolution and the [petitioner's] position cannot be fully developed without professional assistance.'" Powell v. Kelly, 492 F.Supp.2d 552, 557 (E.D.Va. 2007) (quoting Wright v. Angelone, 151 F.3d 151, 163 (4th Cir. 1998)). "'[E]xpert services are not reasonably necessary if the record, viewed in light of the forecasted evidence, would not entitle the petitioner to an evidentiary hearing on his claims, or if the petitioner would not be able to win on the merits regardless of the expert's findings.'" Id. (quoting Bell v. True, 366 F.Supp.2d 403, 405 (W.D. Va. 2005)).

Here, the potential testimony of Petitioner's expert – that Petitioner's blood was "transferred" rather than "dropped" onto Ms. Warfield's thigh – would not allow Petitioner

13

to succeed on the merits of his ineffective assistance claim.[3] As the Magistrate Judge explained,

> [R]egardless of whether the jury believed [Wheeler's] blood to have dripped or to have been transferred onto the victim's thigh, the verdict at trial clearly reflects that the jury entirely rejected Wheeler's last minute explanation for his presence at the apartment. Wheeler had repeatedly and steadfastly denied on at least three occasions prior to his arrest that he was even at the apartment on the evening of the murders. Further, he admittedly lied repeatedly concerning the nature of the wound on his left forearm, which he attributed to a bite from a woman, Teresa Warrick, who herself later testified at trial that Wheeler and another individual had repeatedly asked her to lie that she had bitten Wheeler when, in fact, as Wheeler later admitted in his testimony, the wound on his forearm was produced by a knife. Not only was the jury aware of this blatant and inexplicable inconsistency, it was also fully aware of Wheeler's own belated explanation of the attack by the unknown assailant."
>
> (DN 38, Magistrate's Order, p. 53).

Therefore, even assuming that trial counsel was objectively unreasonable in failing to hire a blood spatter expert to contradict the prosecution's showing that Wheeler's blood was "dropped" onto Warfield's thigh, Wheeler could not succeed on the merits of his ineffective assistance claim because he would not be able to show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Accordingly, the Magistrate Judge's decision to deny funds to hire an expert pursuant to 18 U.S.C. § 3599 will also be upheld.

---

[3] The Court notes that in his request for expert assistance Petitioner also asserted that a blood spatter expert was needed to "factually develop" his fourth habeas claim that the prosecution's blood spatter testimony was erroneously admitted. (DN 30, Motion to Appoint Expert, p. 2). However, Petitioner's original request did not explain why an expert was necessary for that claim, he has not argued it in his objection to the Magistrate Judge's order, and it is unclear to the Court how the services of a blood spatter expert are related, let alone reasonably necessary, to that claim of legal error.

14

## IV. CONCLUSION

For the foregoing reasons, Petitioner's "objections" to the Magistrate Judge's order denying Petitioner's motion for discovery and motion to appoint an expert are **OVERRULED** and the Magistrate Judge's order is **AFFIRMED**.

cc. Counsel of Record